Next, we have Elorreaga v. ViacomCBS and Warren Pumps, I should say. Good morning, counsel. Good morning, Your Honor. Chris Conley here today for ViacomCBS Inc., formerly known as Westinghouse. I would like to, with the Court's permission, reserve 5 minutes of rebuttal for Ms. Hepler to present on behalf of the intervenors. Very well. Your Honor, there are two prior opinions by this Court that basically answer the main question in this appeal, McKay and Cooey. Both of those cases held as a matter of binding precedent, both before and after Boyle, that a military contractor defense can be stated to a Federal law claim, including specifically a Maritime law claim. In fact, the McKay case held that before Boyle, and if you look at footnote 1 in McKay, the Court stressed that that would be true whether you had a statutory Maritime claim, like a death on a high sea axe claim, or a common law general Maritime claim, that that would make no distinction to the immunity. How did the District Court get so twisted around that it said it could not find any case in which a Federal contractor defense was applied in a Federal claim? Your Honor, I can give you what I think is an honest question. It may not be a good question. Given the—good answer—the number of defendants involved and the amount of paper that flowed into the Court on this summary judgment motion briefing, between the competing summary judgment motion briefs and the record, and the short turnaround, I think the Court just missed it. I don't have a good explanation for why the Court didn't notice McKay earlier. I think it's to the Court's credit that once we moved for certification, the Court did take notice of McKay. If we thought the District Court was wrong in its analysis of Boyle—that is, that Boyle is limited to State claims because it's a preemption case—and we send this back, what do you brief to the District Court? Is this years late? Your Honor, that's the way I read Ninth Circuit precedent. You would cite Yearsley and what else? McKay? Well, we would cite McKay and Yearsley. Frankly, I would have some problem in that the way I read Ninth Circuit precedent is we have one standard being applied for military contractors and one standard being applied for contractors who are not involved in military matters, that Boyle is a military case that controls military matters. Yearsley remains the test for non-military contractors. I'm frankly going to have difficulty under that dichotomy because it's clear that Westinghouse was a military contractor. What do we do with DeVries? Your Honor, here I think the answer on DeVries is simple, at least for purposes of Westinghouse. It certainly doesn't impact the Boyle question in that in DeVries, I know because I argued the case all the way up, back down, and then all the way back up again, is that we raised both a Boyle defense and a bare metal argument in DeVries. The District Court decided the bare metal issue and so decided it did not need to reach the Boyle defense. That was the exact same approach then taken by the Third Circuit and by the U.S. Supreme Court. Neither court on appeal reached Boyle because that issue was not in front of them. The only issue that had been appealed was the District Court ruling on the bare metal issue. It goes all the way back down to the District Court and we won on the bare metal issue, which mooted our Boyle defense. Counsel, the intervener in its reply brief said that in fact the parties had stipulated in DeVries that there was no, that the contractor defense was not part of the case. Is that what in fact happened in the record? I believe that's correct. I don't believe it's in the record. I believe it's in the appellate brief or one of the appellee briefs, but I'm not sure if it's in the record or not, Your Honor. So I'm a little confused because Boyle does seem to apply to state torts and it's preemption. I don't know why Boyle would be applicable in DeVries because the court is very clear that that's a federal maritime claim and it's deciding federal common law. Well, I think Judge Fitzgerald's opinion in Olerton that we cited too in our initial brief goes a long way to answering that question. Basically you have the court in Boyle saying we are going to strengthen and broaden the protections afforded most contractors by yearsly in the specific context of military matters. We're going to go away from a pure agency test and make it much broader and make it a review and approve standard. And just like in Olerton where Judge Fitzgerald was confronted with a military services contract and found that, okay, Boyle only dealt with procurement contracts, but we know the lesser, less rigorous protection afforded all contractors by yearsly extends to services contracts because that's what yearsly was. We know that Boyle was intended to strengthen the protections afforded contractors in the military context. So there's no sane reason to assume that in all other ways Boyle was meant to strengthen the defense but to strip away this right enjoyed by all other contractors to voice immunity either to a services contract or to a procurement contract. We have the same thing here. Yearsly and then later the Gomez Supreme Court decision makes clear that yearsly itself can extend to a federal law claim for non-military contractors. There's no reason to assume the military contractor who was given greater protection under Boyle should not enjoy that same right. Certainly there's no discussion of that in Boyle because there was no federal law issue. So in a case like DeVries, the court does not refer to Boyle or to yearsly. And so I'm left a little confused by the Supreme Court's decision there. Are those defenses still available to the contractors in DeVries? Absolutely, Your Honor. The only reason that wasn't considered by the DeVries Supreme Court is because the only issue that had gone up on appeal to the Third Circuit and then on to the Supreme Court was the summary judgment that had been granted to my client on the bare metal question.  So if we remanded here and sent this back down for further consideration, is DeVries relevant? Oh, absolutely, Your Honor. In this case? Absolutely, Your Honor. It would at least raise the question of whether your client had the obligation to tell the to advise the military of the dangers of insulating this with asbestos if the government didn't already appreciate those dangers. That's correct, Your Honor. And we would say that our undisputed proof that the government had different choices to make other than asbestos and made the choice to use asbestos does not put us on the hook for that choice. Because the government would have known that asbestos was dangerous at least as well as you would have known. Is that your theory? Well, that's right. But for the first prong of DeVries, you don't even get into knowledge of the hazard. That's the second and third prong of the three-part consensus. Right. It's the last prong. Right. And what I'm saying is plaintiffs never get to those two prongs because they fail the requirement test because Westinghouse didn't require the use of asbestos. The Navy chose to use asbestos despite knowledge of non-asbestos alternatives. My reading of those cases is that if something else is going to have to be incorporated, even if it's not part of what you're providing to them, that you have to give them advice if you know of some dangerous use that the government may not be aware of. Your Honor, that's not the way I read DeVries. I believe DeVries applies a three-part test where the plaintiff has to check each of the three boxes serially. And the first test is there must be some required use of asbestos. There had to be no choice on the part of the Navy to choose asbestos or not. We never get past that test here because the evidence is clear they had the ability to use non-asbestos and chose not to. That's not the way I would have read McKay or Boyle or DeVries, but it seems like you've got plenty of room to argue that later on. And, Your Honor, I would agree with that, but it's because it's two different questions. DeVries is answering a question that goes to the merits of plaintiff's tort claim, whether there's a duty or not. McKay and Boyle answer a separate question, the affirmative defense of immunity. So those are actually answering two different questions. It's not that they're giving two answers to the same question. Counsel, one of the reasons we're here, obviously, is the argument by the Appleys, which explicitly or implicitly the district court agreed with, that there is something special about the general maritime claims. Why, since you won't be addressing this again, why do you believe that those arguments are incorrect? Well, Your Honor, we know they're incorrect because McKay and Cooey both involve maritime claims. It's not just that binding Ninth Circuit precedent makes us know that federal law claims are susceptible to Boyle. They tell us that federal maritime claims are susceptible to Boyle. And you don't see a distinction. You feel that they also don't create any basis for a distinction between statutory and general claims. No, Your Honor, and footnote one in McKay is explicit about that fact, that that would make no distinction. And, in fact, if you look at footnote four, I believe it's in Cooey, we know that both general maritime and death on the High Seat claims were stated in that case. And yet when the court got around to granting the Boyle defense, it did not draw any distinction between those two theories. Your Honor, I'm really short on time, and I want to reserve something for my fellow defendants. And so, unless there are any other questions. Any other questions? All right. Thank you. Thank you, Your Honor. Counsel? I want to first apologize for not having a tie, and I want to apologize for being late in my failed attempt to get a tie. We've been there, Counsel. Counsel, you look very relaxed. I don't feel it. Your Honor, the first question Judge Bybee asked is why did the district court miss McKay? And the answer is the district court did not miss McKay. McKay was cited in the moving papers by Viacom in the motion for summary judgment. McKay was also cited in their reply. The judge didn't miss McKay. This case was never cited for the government contract defense. The defendants cited Boyle for the elements of the government contractor defense. If they were going to cite Ninth Circuit precedent for the interpretation of the Boyle government contractor defense, they would cite the Nielsen case, or they would cite In re Hawaii asbestos, because those are the cases that followed the Boyle case. So at no point has a defendant in this case moved for summary judgment based on the Ninth Circuit interpretation of McKay. The only citation of McKay in the moving papers from the defendants was to distinguish who the user of a product is. Is the user the Navy, or is the user the plaintiff? Why didn't the district court acknowledge Yearsley? It's cited later on in the opinion, but not acknowledged in that place where the district court says, I can't find anything. Yearsley clearly dealt with government contractors in a federal claim. It's not a military claim. The Boyle case, now I know that the Supreme Court later in Ewell Campbell, but the Boyle case specifically says Yearsley is not a doctrine that we are to use for this government contractor defense. Yearsley involved an act of Congress. Congress passed a law to flood this basin. That law was then carried out by this contractor who was acting on the authority of the government to flood the basin that was part of a congressional law. What Boyle says is it's essentially limited to a takings case. Now that's not what Campbell Ewell said. Campbell Ewell said it's not limited to a takings case, but at the same time, no one has applied Yearsley to facts like this. In fact, Yearsley, I can't think of many times it's been applied where people said you are immune because of the Yearsley case because it's such a unique case. So that the district court didn't reference Yearsley is not a surprise because Boyle specifically says Boyle, as cited by the defendant, says don't look at Yearsley, look at Boyle. If you look at Yearsley... Well, I'm going to just... I don't want to hash out all of the differences between Boyle and Yearsley, but Boyle did deal with state tort law claims and it's a preemption analysis. Yes. And that just wouldn't be applicable to Yearsley at all, but it certainly started with Yearsley. I mean, Yearsley is part of the history it goes through, Your Honor, but they clearly... I've got the citation where they say specifically, if I could get it in my computer, they say Yearsley is not the analysis you use for this sort of question. Right, because it's a state law claim. That's why they went with a preemption analysis. I understand what you're saying. Preemption analysis would not have been applicable in Yearsley or in any federal claim, in any federal, any cause of action created under federal law. Preemption is not the right analysis. You're saying, I understand now, you're saying if we're looking at the analysis of federal law and not preemption, you would go to Yearsley and not Boyle. I'm sorry, I didn't understand. The Supreme Court also says in Boyle, if Yearsley applied, it would have to be a situation where the defendant had no discretion. If the defendant, none, made no choices, if the defendant was building the helicopter in question, it would have to have not specifications, not guidelines, the government would essentially have to give them an, almost an Ikea box and they would have to build the helicopter from the box where the government specified every single thing. And there is no evidence and no one asserted, not in the moving papers or in the reply for the defendants, no one has asserted that that's the case. So if that is a basis for immunity from federal law, and I agree it is, I don't disagree, Yearsley is, yes, I agree, and it's still good law, it is an impossible standard here. Counsel, I'm sorry, to what degree is your position here that the general maritime claims are special and if so, what's the basis for that assertion? Well, it's, I would say there are two reasons. One is discussed in the papers and the second is not, but I'd raise it here. One is the special place maritime law has in protecting sailors and that is distinct from the Death on the High Seas Act. For example, the Coohee case doesn't involve sailors. Those people were very unfortunate and they were in an airplane that flew through essentially a war zone and was shot down because of a mistake made by the United States. And that is why the Coohee case is not binding precedent here. The Coohee case doesn't go through any of the elements of the design defect of the Aegis system. It doesn't say that there were any specifications from the government. What it says is essentially is the United States government made a decision to shoot down a plane. They used this gun to do it, this missile, whatever it is, but it was the agency of the United States that made the decision. That's why there's no discussion. And that's why the Coohee case wasn't cited in the moving papers or the reply from the defendants in their summary judgment motions. The first time we see it is in the appeal. I got lost from your question because I got so excited to discuss Coohee. Why are the special maritime claim? What is special about the general maritime claim? Secondly, it is federal law. And federal law, certainly maritime law, provides for the defendants to bring this defense even if it's not an absolute defense. The defendants, and this is also why maybe we don't need to decide this right now. Maybe we wait until this thing plays out because the defendants can still present evidence of the Navy's involvement in the design. They can still present evidence that they weren't allowed to warn. And at the end of the case, the jury is going to get a decision, have an opportunity to decide if they were negligent or not. There's strict liability under maritime law also. But at the end, they'll get to determine percentages of fault. And they can put a percentage of fault on the United States Navy as a third party. And they could put 100% fault on the Navy. So they would have an opportunity to hear this evidence and say, well, I think you acted reasonably based on what the Navy told you to do. So you're not negligent. And I don't think your design was a problem because the Navy told you the design. And I don't think the warning was a problem because the Navy told you the warning. And even if I thought that wasn't a problem, I could put 100% on the Navy at the end. So there is still an opportunity in this case to present all the same evidence. The Navy's knowledge of asbestos, the Navy's steps to protect or not protect sailors from asbestos, and importantly, the Navy's involvement in the design of the products, the use of asbestos, and the Navy's procurement of warnings, including, if they have evidence, the Navy's prohibition about warning about asbestos. If I thought that the district courts, that we should reverse the district court's order and send it back for further consideration of the contractor defense, what role, if any, does DeVries play in the future of this litigation? Well, so if we look in the history of this issue in the Ninth Circuit and in the Supreme Court, the first case, as cited by the defendants, for the idea that a government contractor defense would apply to federal law is the McKay case. That is, of course, referenced in the Boyle case, and the Boyle case also says it's still an open question as to whether or not this applies to federal law. There's a note in the dissent where McKay is referenced as one of the cases where it would not, where such a defense would prevail in federal law, and then there's another, other districts, or other districts where it would not. Then we go to Nielsen, which interprets Boyle. Then we go to In re Asbestos and Coohee. Hercules confirms in 1996, in the dissent, that McKay is one of the cases that was essentially overruled by Boyle because McKay embraced the Ferris Doctrine, whereas Boyle specifically rejected the Ferris Doctrine. But then you get to DeVries, and that's in 2014. It is maritime law. It is exactly this defense. There is no reference to the government contractor defense. It is exactly this scenario, ships, I mean, exactly the same disease, same exposure, same it's. So is it your contention then that if we sent this back to the district court, you would just come up and say, well, DeVries answers this question, there is no government contractor defense. We're just simply going to apply the elements of DeVries? If you were to send this back to the district court to determine, we still have to deal with DeVries. I mean, we have to deal with that at the trial court level. That was already ruled on separately. That's a Mr. Connolly says that in the DeVries case, that the government contractor defense is still available, but the Supreme Court didn't decide anything. It doesn't mention Yearsley. It doesn't mention McKay. It doesn't It doesn't mention Gomez. It doesn't mention Boyle. And he suggests that in that litigation, and I looked at the underlying papers, and it seems that the district court in Pennsylvania agrees that the government contractor has not been raised there yet and can still be raised. Do you disagree with that? It's shocking. It seems odd that the Supreme Court would come up, would look at this issue that it described as novel, would come up with elements for this bare metal defense, but would, I guess from perhaps a strategic reason, from the defendants challenging it, or the courts, I mean, forgot about it or didn't care, that they would come up with this, these elements for liability that another opinion would completely wipe out. So yes, it's not addressed in DeVries. I agree. And I think that is why DeVries, or DeVries, I don't know, I think that's why it's important. But DeVries, that has been ruled on. It's a separate issue. Can we be liable if the insulation on the Westinghouse turbine wasn't purchased from Westinghouse or installed from Westinghouse? That's the bare metal defense. They delivered a turbine. Someone else put insulation on it. You get into things related to foreseeability, but that's a liability issue. I agree. It's not a government contractor case. It's a liability issue. It's just telling that they never talked about this thing that apparently is so important. But does DeVries tell us that there is no government contractor defense if the contractor fails to advise the government of a dangerous situation that the contractor itself is not immediately responsible for? It's not in those terms. There's no mention, I don't believe, to government contractors at all. It's regular old product liability language. It's product manufacturers. This is a product... But they are government contractors, and all of the reasoning in Boyle is likely to come to bear. That is, if Westinghouse is found liable for having failed to advise the Navy of the dangers of asbestos, even though Westinghouse wasn't installing it at all, it wasn't part of their contract but failed to advise them, then they're going to contract differently in the future. And the Navy will perceive this very differently. So I'm just trying to figure out... I completely agree with you, but I think it's bizarre that the Supreme Court would decide DeVries without mentioning Boyle, Yearsley, and those whole lines of cases. I don't get this at all, but that's where we are. I'm trying to figure out how all of this fits together. It doesn't seem to me that DeVries can just be about the merits of the tort. It seems to me that it has some integration with the question of the government contractor defense. I'm just buffaloed as to how it fits. You guys look at more law than me. I haven't tried to put those together, other than it's odd that they would acknowledge a tort... I can't really tell, but I'll take your word for it. And the rope. Thank you. Counsel, we heard the argument that McKay footnote one makes clear that there's no distinction, first of all, between maritime claims and other federal claims and also between statutory and general claims. So why do you think that's just a misreading of the footnote or that McKay as to that was implicitly overruled for the reason that you seem to suggest or what's your response to that specific point? You mean, is McKay finding precedent in the Ninth Circuit for the elements of the government contractor defense? Well, that's specifically on whether there is a distinction between maritime claims or between statutory and general maritime claims. I would answer it this way, and it is that the Death on the High Seas Act, as I mentioned before, involves maritime law. I am in agreement. It is not strictly a maritime case in the sense that the cases we're discussing that involve the Death on the High Seas Act don't involve sailors, seafarers. If you were to look in the Ninth Circuit model jury instructions, it would give you the definition of a, I forget if it's a seafarer or whatever. And the Coogee case, those people would not be seafarers. So there is some distinction in the way general maritime law seeks, I would say, would seek to protect sailors that perhaps is different from a statute that is more general. Counsel, I know you're over your time, but are there any other questions? I have no questions. Thank you. All right. Thank you, Counsel. Ms. Hepler. Good morning, Your Honors. Laurie Hepler representing Intervenors. Let me go to this DeVries question first, if I may. DeVries said absolutely nothing about the government contractor defense or BOIL, much less whether the defense applies in maritime law cases. Judge Bybee finds it a little strange that it didn't, but to be blunt, DeVries was a little thin in several respects. There are no facts, for example, discussed in DeVries, or very, very few. Our position presents no inconsistency whatever with DeVries, and our brief explained why the project of describing a duty to warn in DeVries really didn't overlap with any need to discuss the government contractor defense because there are situations in which one can apply and not the other, or vice versa. Our brief goes into that in some detail. The point is, Your Honor, you can do your full job in this case without ever mentioning DeVries. That project, the DeVries analysis and the duty to warn, will be part of the district court's job on remand if you reverse, but it has really, truly nothing to do with the government contractor analysis here. Regardless of whether, and I want to also get to Judge Fitzgerald's concern about the lack of any distinction, if I may, for maritime claims, but the real point I want to make to Your Honors this morning is that regardless of whether claims arise, whether claims against the military contractor arise under state law, federal statutory law, or maritime law, the policies that animated Boyle and that drove McKay apply equally, right? We can't have undermining of the government's immunity through the backdoor, as McKay described it, by assigning tort liability to a manufacturer that has complied with reasonably precise specifications and, of course, fulfilled the other factors set forth in Boyle, which Boyle adopted directly from this court. The only difference in Boyle and McKay is the legal basis for being the Federal Tort Claims Act discretionary function exception versus Ferris Stencil. That was the only change the Supreme Court made in adopting wholesale, the McKay analysis of what public policy requires and why we should not, why we should allow manufacturers who supply military products, supply complex products to the military, why we should allow them to assert the defense under the criteria set forth in Boyle. Judge Fitzgerald, maritime claims are not different. Miles versus Apex Marine from the U.S. Supreme Court is the leading teaching case on this. The court should reject plaintiff's efforts to make this government contract defense unavailable in general maritime where this court has clearly applied it to federal statutory claims. Apart from the policies that underlie all of them equally, the doctrine of solicitude for sailors cannot justify a distinction. They haven't cited a single case in which the solicitude doctrine foreclosed this affirmative defense and, in fact, both Miles and Dutra Group versus Vatterton specifically require rejection of that argument. Miles requires uniformity in the treatment of statutory and general maritime claims and it rejected a plaintiff's argument identical to the one we've heard today, that the special solicitude doctrine justifies allowing a recovery in maritime common law that would not be allowed under maritime statutes. Dutra Group, and I'll just quote briefly, said only five years ago that the special solicitude doctrine, quote, has only a small role to play in contemporary maritime law, unquote. Nothing in DeVries changes that. DeVries itself weighed the special solicitude doctrine against other policy concerns in selecting a middle path between the foreseeability rule that the plaintiffs advocated and the bare metal rule that the defendants advocated in that case. So special solicitude for sailors still has a little bit of vitality, not a lot, but it has a little bit under DeVries. But the point is that the U.S. Supreme Court weighed that doctrine against other public policies that were more important in its view in rejecting the rule that the plaintiff advocated. This court has already endorsed in McKay the public policies that require recognizing the general contractor defense. The U.S. Supreme Court affirmed and adopted that rationale in Boyle, and that, we submit, is all that's required to resolve the question before you. Thank you, Your Honors. All right. Any other questions? Any other questions? No. All right. Thank you. Thank you for your presentations. The matter of El Uriaga v. Viacom's CBS, Inc. is submitted at this time. Thank you again.
judges: BYBEE, MENDOZA, Fitzgerald